**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

YVONNE PINCKNEY-STOVALL,

                CIVIL ACTION NO. 2:16-cv-13853

      *Plaintiff*,          DISTRICT JUDGE GERSHWIN A. DRAIN

*v.*                     MAGISTRATE JUDGE PATRICIA T. MORRIS

COMMISSIONER OF SOCIAL SECURITY,

      *Defendant*.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT (Docs. 9, 12)

## I.    RECOMMENDATION

    **IT IS RECOMMENDED** that Pinckney-Stovall's Motion for Summary Judgment, (Doc. 9), be **DENIED**, and the Commissioner's Motion, (Doc. 12), be **GRANTED** because the reopening of the 2007 decision exceeded four years and was untimely.

    Alternatively, if the case is considered on the merits, it would be recommended that the Plaintiff's motion be granted, the Commissioner's motion be denied, and the case be remanded under sentence four of §405(g) for the ALJ to comply with SSR 83-20.

## II.    REPORT

### A.    Introduction and Procedural History

    Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned Magistrate Judge for the purpose of reviewing a final decision by the Commissioner of Social Security ("Commissioner")

1

denying Plaintiff Yvonne Pinckney-Stovall's ("Pinckney-Stovall") claim for disabled adult child ("DAC") benefits under Title II of the Social Security Act 42 U.S.C. § 401 *et seq.* (Doc. 3). The matter is currently before the Court on cross-motions for summary judgment. (Docs. 9, 12).

Pinckney-Stovall previously filed an application for SSI and was found disabled in a decision dated November 21, 2002. (Tr. 147-48). The decision does not appear in the record. On September 28, 2007, Pinckney-Stovall filed for disabled adult child ("DAC") benefits ("2007 denial")—alleging a continuing disability with an onset date before she attained the age of twenty-two—was denied them, and was advised that she could request a hearing if she disagreed; no appeal followed. (Tr. 50-52, 62-66).

On November 18, 2010, Pinckney-Stovall filed a renewed DAC application alleging disability since December 5, 1991. (Tr. 159-67). The Commissioner denied her claim, (Tr. 53), and she requested a hearing before an ALJ, (Tr. 67-69), but withdrew her request on May 26, 2011, (Tr. 70). The ALJ, in turn, dismissed the hearing request on June 6, 2011. (Tr. 54-57). Thereafter, Pinckney-Stovall hired Jarvis Williams as an attorney to represent her in the matter, and on June 20, 2013, she requested review of the ALJ's dismissal of her hearing request. (Tr. 79-81). The Appeals Council granted her request and vacated the June 6, 2011 dismissal order, remanding the case. (Tr. 58-61). The reasoning for this remand rested on the nature of her withdrawal request, as it explained:

> When a request for hearing is dismissed based on withdrawal of the request, the record must show that the claimant fully understands the effect of such an action. . . . [I]n her request for review, the claimant alleges that she was unrepresented and did not understand the appeals process. The record in this case does not reflect that the claimant was fully advised of the effects. She

2

> further alleges that she has physical and mental impairments that interfere with her comprehension. The Appeals Council notes that the claimant is currently receiving Supplemental Security Income benefits due, in part, to borderline intellectual functioning. . . . Therefore, the Appeals Council concludes that there is good cause to vacate the dismissal action in this case.

(Tr. 59). The remand rested on this narrow ground, and the Appeals Council did not discuss *res judicata* effect of the 2007 denial.

At her hearing on August 27, 2014, Pinckney-Stovall testified alongside her attorney. (Tr. 41-49). The ALJ referred her for a psychological evaluation and ordered treatment records. (Tr. 46). Thereafter, the ALJ secured additional evidence and entered it into the record, reminding Mr. Williams to submit additional materials. (Tr. 258). Mr. Williams asked for more time on October 9, 2014, and the ALJ granted his request. (Tr. 123-42, 260). On March 27, 2015, Pinckney-Stovall appeared for a supplemental hearing but her attorney was not in attendance. (Tr. 22-24). Following the hearing, Pinckney-Stovall retained attorney Andrea Hamm, who represents her in the present Motion. The ALJ's written decision, issued July 16, 2015, found no ground for reopening Pinckney-Stovall's 2007 denial and that there was "an issue of *res judicata*." (Tr. 16). Because the Appeals Council instructed a hearing be held, however, he addressed the evidence and found that it would not have entitled Pinckney-Stovall to DAC benefits. (*Id.*). On September 13, 2016, the Appeals Council denied review, (Tr. 1-5), and Pinckney-Stovall filed for judicial review of that final decision on October 31, 2016. (Doc. 1).

### B.    Standard of Review

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to

3

determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F App'x. 502, 506 (6th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id.* at 286 (internal citations omitted).

### C.  Framework for Disability Determinations

Under the Act, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

4

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner

is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

Under the authority of the Social Security Act, the SSA has promulgated regulations that provide for the payment of disabled child's insurance benefits if the claimant is at least eighteen years old and has a disability that began before age twenty-two (20 C.F.R. 404.350(a) (5) (2013). A claimant must establish a medically determinable physical or mental impairment (expected to last at least twelve months or result in death) that rendered her unable to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). The regulations provide a five-step sequential evaluation for evaluating disability claims. 20 C.F.R. § 404.1520.

### D.    ALJ Findings

Following the five-step sequential analysis, the ALJ found Pinckney-Stovall not disabled prior to the age of twenty-two under the Act. (Tr. 10-21). At Step One, the ALJ found that Pinckney-Stovall had attained the age of twenty-two already at the time of her alleged onset date of December 5, 1991 and had never engaged in substantial gainful activity. (Tr. 15). At Step Two, the ALJ construed Pinckney-Stovall's application as implicitly seeking to reopen the prior unfavorable decision from 2007, which he refused to do. (Tr. 16). He also noted the absence of "medical signs or laboratory findings to substantiate the existence of a medically determinable impairment" before age twenty-two. (*Id.*). Accordingly, the ALJ ended his analysis, noting that Pinckney-Stovall "has not been

6

under a disability, as defined in the Social Security Act, at any time prior to January 5, 1991, the date she attained age [twenty-two] . . . ." (Tr. 17).

### E.    Administrative Record

#### 1.    Medical Evidence

The Court has reviewed Pinckney-Stovall's medical record. In lieu of summarizing her medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

#### 2.    Application Reports and Administrative Hearing

##### i.    Pinckney-Stovall's Testimony at the Administrative Hearings

Pinckney-Stovall's first hearing occurred on August 27, 2014. (Tr. 41-49). She was accompanied by attorney Williams, and although a VE was present, he gave no testimony. The ALJ's questions largely centered on why she voluntarily dismissed her 2011 application, to which she indicated "I got very confused and so she was telling me that I didn't have enough information . . . with me with my paperwork." (Tr. 44). Thereafter, the ALJ confirmed with her that she was not working, that she was taking Xanax for anxiety, and that she began receiving benefits in 2001. (Tr. 45-47). He indicated he would "send her out for a psych evaluation" as well. (Tr. 46).

The supplemental hearing occurred on March 27, 2015, (Tr. 22-40), and this time attorney Williams was not in attendance, so Pinckney-Stovall testified *pro se*, (Tr. 24). Vocational Expert ("VE") Roscoe also appeared and gave testimony. Pinckney-Stovall first indicated that she lived in a motel with her three children, and survived off the monthly

SSI checks. (Tr. 24-25). Her children were able to help in activities like driving, which she needed because of "the problems that I had in my child life throughout my whole situation, . . ." (Tr. 25). She used to fall a lot, a problem for which she used a brace. (Tr. 25-26). "I fell throughout my whole entire life since I was younger" because "I was born with polio." (Tr. 26). "They told me I was supposed to die at eight years old." (*Id.*). For these issues, she saw medical specialists and took a number of medications: Tramadol, Flexeril, and Norcos. (Tr. 27). These medications were effective, in her estimation, as was the counseling she received. (Tr. 27, 31). Nevertheless, the pain was "unbearable and I've been like this for years, but it's just getting worse[] and I explained that to everybody, . . ." (Tr. 32).

### ii.     The VE's Testimony at the Administrative Hearing

The ALJ's first hypothetical asked the VE to assume a person "the same age, education, and work experience as Ms. Stovall" capable "of light work" that required no "kind of production-like standards, so like an assembly line or a conveyor belt where if the hypothetical person were to mess up, it would affect other peoples' work, so that wouldn't be a part of the work I'm talking about." (Tr. 34-35). In addition, the person's work "would not be work in any way dealing with the public and there would only be occasional interaction with coworkers and supervisors. Would there be jobs in the national economy such a person could perform?" (Tr. 35). The VE indicated that certain jobs would exist, such as: housekeeper or office cleaner—with 15,000 regional job availabilities and 600,000 national job availabilities—machine tending—with at least 10,000 regional job availabilities and 90,000 national job availabilities—mail sorting—with 1,500 regional job

availabilities and 60,000 national job availabilities—and simple assembly—with 6,000 regional job availabilities and 100,000 national job availabilities. (Tr. 35-36). After reviewing these answers, there followed a brief interlude in which Pinckney-Stovall expressed frustration with the Social Security process. The ALJ then concluded the hearing forthwith.

### F.    Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations carve the evidence into various categories, "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513. "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* § 404.1513(a). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.* § 404.1513(d). Only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).   Both    "acceptable" and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id.*. When "acceptable medical sources" issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner,

such as whether the claimant meets the statutory definition of disability and how to measure his or her RFC. *Id.* § 404.1527(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. 20 C.F.R. § 404.1527(c). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c). ALJs must also apply those factors to "other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

Certain opinions of a treating physician, in contrast, receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2 (July 2, 1996). Therefore, the ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2 (July 2, 1996). The ALJ "will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or

10

equals a Listing, the individual's RFC, and the application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to the treating source's opinion in the written determination. 20 C.F.R. § 404.1527(c)(2); *see also Dakroub v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits

> must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996); *see also Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec'y of Health & Human Servs.*, 882 F. Supp. 637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273 (Table), 1995 WL 138930, at *1 (6th Cir. 1995).

An ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p, 1996 WL 374186 (July 2, 1996). Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quoting *Green v. Schweiker*, 749 F.2d 1066, 1071 (3d Cir. 1984)) (internal quotation marks omitted), a claimant's description of his or her physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," 20 C.F.R. § 404.1528(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence. SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996). Instead, the absence of objective confirming evidence forces the ALJ to consider the following factors:

(i)    [D]aily activities;
(ii)   The location, duration, frequency, and intensity of . . . pain;
(iii)  Precipitating and aggravating factors;
(iv)   The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

12

      (v)     Treatment, other than medication, . . . received for relief of . . . pain;

      (vi)    Any measures . . . used to relieve . . . pain.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027,

1039-40 (6th Cir. 1994); SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996). Furthermore,

the claimant's work history and the consistency of his or her subjective statements are also

relevant. 20 C.F.R. § 404.1527(c); SSR 96-7p, 1996 WL 374186, at *5 (July 2, 1996).

      The claimant must provide evidence establishing her RFC. The statute lays the

groundwork for this, stating, "An individual shall not be considered to be under a disability

unless he [or she] furnishes such medical and other evidence of the existence thereof as the

Secretary may require." 42 U.S.C. § 423(d)(5)(A); *see also Bowen*, 482 U.S. at 146 n.5.

The RFC "is the most he [or she] can still do despite his [or her] limitations," and is

measured using "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(2).

A hypothetical question to the VE is valid if it includes all credible limitations developed

prior to Step Five. *Casey v. Sec. of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir.

1993); *Donald v. Comm'r of Soc. Sec.*, No. 08-14784-BC, 2009 WL 4730453, at *7 (E.D.

Mich. Dec. 9, 2009).

      In the Sixth Circuit, a prior decision by the Commissioner can preclude litigation in

subsequent cases.

> When adjudicating a subsequent disability claim with an unadjudicated period
> arising under the same title of the Act as the prior claim, adjudicators must
> adopt such a finding from the final decision by an ALJ or the Appeals Council
> on the prior claim in determining whether the claimant is disabled with respect
> to the unadjudicated period unless there is new and material evidence relating
> to such a finding or there has been a change in the law, regulations or rulings
> affecting the finding or the method for arriving at the finding.

SSAR 98-4(6), 1998 WL 283902, at *3 (acquiescing to *Drummond v. Commissioner*, 126 F.3d 837 (6th Cir. 1997)). The applicable regulations explicitly invoke *res judicata*: An ALJ can dismiss a hearing where "res judicata applied in that we have a previous [final] determination or decision under this subpart about your rights." 20 C.F.R. §§ 404.957, 416.1457. Ultimately, the *res judicata* effect of past ALJ decisions is actually a form of collateral estoppel precluding reconsideration of discrete factual findings and issues. *See Brewster v. Barnhart*, 145 F. App'x 542, 546 (6th Cir. 2005) ("This Court will apply collateral estoppel to preclude reconsideration by a subsequent ALJ of factual findings that have already been decided by a prior ALJ when there are no changed circumstances requiring review.").

In *Drummond*, the Sixth Circuit held that the first ALJ's RFC applied to a subsequent period unless the circumstances had changed. 126 F.3d at 843. The court later reaffirmed this principle in *Haun v. Commissioner of Social Security*, rejecting the argument that *Drummond* allowed a second ALJ to examine *de novo* the unadjudicated period following the first denial. 107 F. App'x 462, 464 (6th Cir. 2004). The Commissioner's internal guide explains the different issues and factual findings precluded by *res judicata* under *Drummond*. *See generally Soc. Sec. Admin., Hearings, Appeals, and Litigation Law Manual*, § I-5-4-62, 1999 WL 33615029, at *8-*9 (Dec. 30, 1999). These include the RFC and various other findings along the sequential evaluation process, such as "whether a claimant's work activity constitutes substantial gainful activity," whether she

has a severe impairment or combination of impairments, or whether she meets or equals a listing. *Id.*[1]

Evidence of "changed circumstances" after the prior decision allows the ALJ to make new findings concerning the unadjudicated period without disturbing the earlier decision. *See Bailey ex rel. Bailey v. Astrue*, No. 10-262, 2011 WL 4478943, at *3 (E.D. Ky. Sept. 26, 2011) (citing *Drummond*, 126 F.3d at 842-43). In other words, even though the first ALJ did not make any findings concerning later periods, her decision still applies to those periods absent the requisite proof of changed circumstances. Thus, as applied in this Circuit, SSAR 98-4(6) and *Drummond* essentially create a presumption that the facts found in a prior ruling remain true in a subsequent unadjudicated period unless "there is new and material evidence" on the finding.

To overcome this presumption, the Sixth Circuit has consistently anchored the analysis on the comparison between the "circumstances existing at the time of the prior decision and the circumstances existing at the time of review . . . ." *Kennedy v. Astrue*, 247 F. App'x 761, 768 (6th Cir. 2007). The court explained in a case predating *Drummond*: "[W]hen a plaintiff previously has been adjudicated not disabled, she must show that her

---

[1] Tension exists in the case law addressing whether *res judicata* applies in this manner to pre-hearing determinations. *Compare Wilson v. Califano*, 580 F.2d 208, 211 (6th Cir. 1978) (noting that *res judicata* can apply even where "no oral hearing was held before an ALJ on the prior application"), *with Asbury v. Comm'r of Soc. Sec.*, 83 F. App'x 682, 684 n.1 (6th Cir. 2003) ("We recognize that the applicability of the *Drummond* analysis is not clear with respect to administrative decisions that do not follow 'trial-type' hearings."). This heretofore unresolved issue can generate difficult questions, and courts typically will not address it unless raised and argued by the parties to a case. *See, e.g., Johnson v. Comm'r of Soc. Sec.*, No. 13-CV-14797, 2015 WL 730094, at *3 n.2 (E.D. Mich. Feb. 19, 2015) (declining to address the doctrine's applicability to an initial determination in light of "the tensions in the case law and the parties' failure to raise the argument").

condition so worsened in comparison to her earlier condition that she was unable to perform substantial gainful activity." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1232-1233 (6th Cir. 1993). The ALJ must scan the medical evidence "with an eye toward finding some change from the previous ALJ decision . . . ." *Blackburn v. Comm'r of Soc. Sec.*, No. 4:1-cv-58, 2012 WL 6764068, at *5 (E.D. Tenn. Nov. 14, 2012), *Report & Recommendation adopted by* 2013 WL 53980, at *1 (Jan. 2, 2013). That is, the evidence must not only be new and material, but also must show deterioration.[2] *Drogowski v. Comm'r of Soc. Sec.*, No. 10-12080, 2011 U.S. Dist. LEXIS 115925, 2011 WL 4502988, at *8 (E.D. Mich. July 12, 2011), *Report & Recommendation adopted by* 2011 U.S. Dist. LEXIS 110609, 2011 WL 4502955, at *4 (Sept. 28, 2011). In *Drogowski*, for example, the court rejected the plaintiff's argument that a report met this test simply because it was not before the first ALJ. *See* 2011 WL 4502988, at *2, *8-*9. The relevant change in circumstances is not a change in the availability of evidence but a change in the plaintiff's condition.

*Res judicata* is not a complete bar on reconsidering prior decisions or determinations: the regulations provide two mechanisms for such reexamination that escape the doctrine's effects. *Purter v. Heckler*, 771 F.2d 682, 691-93 (3d Cir. 1985) (discussing reopening as an exception to claim preclusion). The first, less important to *res*

---

[2] I note, as well, that an equally important corollary to this principle dictates that an ALJ may not find *improvement* in a claimant's condition absent new and material evidence thereof following an already adjudicated period. *See, e.g., Albanna v. Comm'r of Soc. Sec.*, 2016 WL 7238925, at *15 (E.D. Mich. Nov. 22, 2016) (finding an ALJ erred by calling the claimant's illiteracy into question based on "thinly substantiated doubts" where a prior decision found him illiterate); *see also Drummond*, 126 F.3d at 842-43; *Hamblin v. Apfel*, 7 F. App'x 449, 451 (6th Cir. 2001).

*judicata* case law, occurs just after the initial determination when the claimant's first step in the review process is sometimes a request for "reconsideration" of that decision. 20 C.F.R. §§ 404.907, 416.1407. The more critical and complicated mechanism is reopening a prior ALJ decision.

The regulations pertaining to reopening permit the Commissioner, through an ALJ or Appeals Council, to peel back the determination or decision and revise it. 20 C.F.R. §§ 404.987, 404.992, 416.1487, 416.1492. Either the claimant or the Commissioner can initiate the process. *Id.* A determination or decision may be reopened "for any reason" within twelve months of the notice of the initial determination, but "good cause" must exist if the reopening occurs within two years of the initial determination for SSI claims, or four years for DIB claims. *Id.* §§ 404.988, 416.1488. Good cause exists if, among other reasons, "[n]ew and material evidence is furnished" for either type of claim, SSI or DIB. *Id.* §§ 404.989, 416.1489. If a determination or decision is reopened properly, *res judicata* does not apply. *Kaszer v. Massanari*, 40 F. App'x 686, 690 (3d Cir. 2002).

The decision whether to reopen, unless it implicates a colorable constitutional issue, evades judicial review: courts can only review the Commissioner's final decisions made after a hearing. *See* 42 U.S.C. § 405(g); *Califano v. Sanders*, 430 U.S. 99, 108-09 (1977). Courts may, however, review a decision *not* to reopen a case in order "to determine whether *res judicata* has been properly applied to bar the pending claim or whether, even though *res judicata* might properly have been applied, the prior claim has nevertheless been reopened." *Tobak v. Apfel*, 195 F.3d 183, 187 (3d Cir. 1999); *see also Kaszer*, 40 F. App'x

at 690 ("'[W]e will examine the record to determine whether or not a reopening has occurred.'" (quoting *Coup v. Heckler*, 834 F.2d 313, 317 (3d Cir. 1987))).

Implicit reopenings occur, with unfortunate frequency, where the ALJ crafts a decision that appears to "readjudicat[e] part of the period already adjudicated by the first decision" rather than "adjudicate only the subsequent period." *Gay v. Comm'r of Soc. Sec.*, 520 F. App'x 354, 358 (6th Cir. 2013). Such a reopening occurs where the ALJ reviews the entire record, including portions from the already adjudicated period, and decides "the merits of the claim." *Tobak*, 195 F.3d at 186. One factor that could lead to finding an implicit reopening is the ALJ's failure to discuss the prior determination or the *res judicata* doctrine. *See Martin v. Comm'r of Soc. Sec.*, 82 F. App'x 453, 455 (6th Cir. 2003); *Crady v. Sec'y of Health & Human Servs.*, 835 F.2d 617, 620 (6th Cir. 1987). Nonetheless, an ALJ's review of old or new evidence does not necessarily signify a constructive reopening, for such a review would be required to decide against reopening as well as for it. *See Girard v. Chater*, 918 F. Supp. 42, 44-45 (D.R.I. 1996). The ALJ's discussion of new evidence likewise might relate to her independent determination of whether to grant benefits in the unadjudicated period, again indicating no reopening occurred. *See id.* at 44.

The ability to reopen—explicitly or implicitly—must meet certain regulatory requirements. 20 C.F.R. §§ 404.987-404.996, 416.1487-416.1494. Chief among these is the two year (SSI) and four year (DIB) time limits for good cause reopenings. *Id.* §§ 404.988, 416.1488. Consequently, an ALJ is powerless to reopen a claim outside these periods. *See Glazer v. Comm'r of Soc. Sec.*, 92 F. App'x 312, 315 (6th Cir. 2004) ("Because

more than four years had passed since the denial of the original application, the Commissioner could not have constructively reopened Glazer's case.").

### G. Analysis

Pinckney-Stovall filed for DAC benefits, which are available "if such child was under a disability . . . at the time he attained the age of 18 or if he was not under such a disability . . . at such time but was under a disability . . . at or prior to the time he attained . . . the age of 22." 42 U.S.C. § 402(d)(1)(G); 20 C.F.R. § 404.350(a). As the court in *Jones v. Comm'r of Soc. Sec.*, No. CIV.A. 11-14176, 2012 WL 4355532 (E.D. Mich. Sept. 24, 2012), explained: the SSA "consider[s] this a 'child's' benefit because it is paid on a parent's Social Security earnings record. The 'adult child'—including an adopted child, or, in some cases, a stepchild, grandchild, or step grandchild—must be unmarried, age 18 or older, and have a disability that started before age 22." *Id.* at *1 n.1 (internal citations and quotation marks omitted). Thus, to demonstrate entitlement to DAC benefits, Pinckney-Stovall needed to show disability on or before her twenty-second birthday. The ALJ found "there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment" "prior to the date the claimant attained age 22" and thus, found Plaintiff was not under any disability prior to January 5, 1991, the date she attained age 22. (Tr. at 15-17.)

Pinckney-Stovall puts forth two arguments in her brief: (1) a Sentence Six remand is required in light of new evidence from Woodsworth Elementary and Dr. DellaPietra,

19

(Doc. 9 at ID 542-45)[3]; and (2) the ALJ contravened SSR 83-20 in two ways: (i) by failing to examine the "previous fully favorable decision dated November 21, 2002 and the record which contained the neuropsychological evaluation from Dr. DellaPietra dated October 21, 1999"; and (ii) by failing to call on a medical expert to pinpoint the alleged onset date.

As an initial matter, I address the ALJ's application of *res judicata* in the present case. The hearing at issue occurred because the Appeals Council believed Pinckney-Stovall furnished enough evidence to suggest she may not have understood the effect of withdrawing her renewed request for a hearing following the 2007 denial. The Appeals Council's instructions provided for a hearing to allow the claimant an opportunity to address the evidence as it related to her withdrawal of her request for a hearing, but expressed *no opinion* as to whether the 2007 decision should be (or was able to be) reopened.[4] ALJs may reopen cases only for good cause within four years of a DAC determination, after which reopening is improper absent a finding that the claimant satisfies criteria enumerated in 20 C.F.R. § 404.988(c), *e.g.*, fraud, failure to prove a person died, the award of duplicate benefits, etc. *See Glazer v. Comm'r of Soc. Sec.*, 92 F. App'x 312, 315 (6th Cir. 2004) ("[A]n ALJ lacks authority to reopen a prior determination after more than four years."); *cf. Korb v. Colvin*, No. 4:12-CV-03847-JST, 2014 WL 2514616, at *6

---

[3] Pinckney-Stovall does not expressly refer to this argument as seeking a "Sentence Six remand," yet suggests that the Court ought to remand the case so the ALJ can evaluate the "new and material" evidence submitted after the hearing. (Doc. 9 at ID 542) (quoting 20 C.F.R. § 404.970(b)). Accordingly, I construe her first argument as grounded in Sentence Six of § 405(g).

[4] The Appeals Council's most recent denial of Pinckney-Stovall's appeal from the instant decision validates this reading of their earlier remand instructions. (Tr. 1-5). To the extent it meant its earlier instructions, (Tr. 59-60), as a command to reopen the 2007 denial, such command was *ultra vires* for reasons discussed in this section.

(N.D. Cal. June 4, 2014) ("[T]he final decision related to a notice of initial determination [was] made on August 23, 2005. The SSA's regulations permit the SSA to reopen a determination or decision within one year of the relevant notice of initial determination, 'for any reason,' or within four years for 'good cause,' . . . Consequently, the SSA was precluded from reopening the final decision after August 23, 2009."). *See generally id.* §§ 404.988(a)-(c). The ALJ's analysis implies that he accurately considered reopening impermissible under the regulations, as more than four years had passed the 2007 denial and Pinckney-Stovall could not establish one of the limited grounds which would permit reopening "[a]t any time . . . ." 20 C.F.R. § 404.988(c); (Tr. 16) ("[T]he undersigned does not find a basis for reopening the claimant's prior Title II application. . . . [T]here is an issue of res judicata; . . .").[5]

Of note, Pinckney-Stovall makes no arguments that, if successful, could circumvent this result. Under SSR 91-5p, (S.S.A. 1991), for instance, which was issued "to avoid the improper application of res judicata or administrative finality when the evidence establishes that a claimant lacked the mental capacity to understand the procedures for

---

[5] The Appeals Council's instructions to the ALJ were not a model of clarity, and they ostensibly fomented some confusion as to the hearing's purpose—both for the ALJ as well as for Pinckney-Stovall and the Commissioner on appeal. The Commissioner, for instance, posits the possibility that the ALJ in fact reopened the case with the final paragraph of his analysis, in which he briefly discussed the significance of Pinckney-Stovall's evidence. (Doc. 12 at ID 563 n.4). Indeed, the Commissioner goes so far as to say that "there is no question that the ALJ did not apply res judicata to the 2007 denial, but rather independently evaluated whether Plaintiff was disabled on or before January 5, 1991 . . . ." (*Id.*). With this, I disagree. Rather, the ALJ appears to base his decision on 20 C.F.R. § 404.988(c) and *res judicata*, while addressing tangentially—as a precaution to comply with a possible reading of the Appeals Council's instructions, and perhaps also to explain the inapplicability of SSR 91-5p, (S.S.A. July 1, 1991), which he explicitly considered and discussed—the merits of the evidence as it related both to her withdrawal of her request for a hearing, as well as to the genesis of her alleged conditions. To the extent the ALJ erred in discussing the merits of the evidence, however, I find such error harmless, for a reopening of the 2007 denial is barred under 20 C.F.R. § 404.988(c) for the reasons explained in this section.

requesting review," a claimant may enable the reopening of a claim when she shows that she "lacked the mental capacity to understand the procedures for requesting review" and withdrew her request before the four-year administrative timeline for good-cause reopenings passed. *Id.* at 1. The grounds for remand she highlights, however, would not empower the ALJ to reopen her 2007 denial, for she fails to articulate, and thus waives, any argument that this regulatory time limit should not apply. "Under *Califano v. Sanders*, 430 U.S. 99, 107-08, 97 S.Ct. 980, 985, 51 L.Ed.2d 192 (1977), when a prior decision is not reopened, this court has no jurisdiction to review the actions of the [Commissioner] on the earlier claim in the absence of a colorable constitutional claim." *Bogle v. Sullivan*, 998 F.2d 342, 346 (6th Cir. 1993); *e.g.*, *Henderson v. Comm'r of Soc. Sec.*, No. CIV. 14-12675, 2015 WL 2063096, at *2 (E.D. Mich. May 4, 2015) ("'It is well-established that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argument, are deemed waived.'" (quoting *Dillery v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005))).

Moreover, Pinckney-Stovall presents no argument as to why a good-cause reopening is permissible outside the four-year limitation set forth in 20 C.F.R. § 404.988(b). Even assuming a reopening possible more than four years after the 2007 decision—which, as explained at some length above, the regulations forbid—the ALJ properly determined that the evidence submitted would not furnish good cause to reopen the case: he noted that the evidence predating her 22nd birthday failed to show that she received treatment for any alleged impairments, or that her alleged impairments limited her ability to function—in other words, the evidence was not material. To the extent his

analysis in this respect falls short (for it is rather brief)—and to the extent such a deficiency matters, considering its peripheral nature to his conclusive invocation of *res judicata*—I simply echo my above observation that Pinckney-Stovall has not proffered any argument as to why the favorable 2002 SSI benefits determination and its record (like the evidence discussed in the prior section) was 'new evidence' within the meaning of 20 C.F.R. § 404.989, and thus could have supplied good cause to reopen. Any such argument is accordingly waived.

### H.    Alternative Analysis

Should the court disagree with the above analysis, I will address each of Pinckney-Stovall's arguments in turn.

### 1.    Sentence Six Remand

Plaintiff's first argument essentially seeks a Sentence Six remand for consideration of past school records, (Tr. 273-85, 288-90), as well as a 1999 neuropsychological evaluation from Dr. DellaPietra, (Tr. 490-93). Remand under Sentence Six is not appropriate unless the claimant shows: (1) "the evidence at issue is both 'new' and 'material,'" and (2) "there is 'good cause for the failure to incorporate such evidence into the record in a prior proceeding.'" *Hollon ex. rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006) (quoting 42 U.S.C. § 405(g)). Evidence is *new* only if "it was 'not in existence or available to the claimant at the time of the administrative proceeding.'" *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)). It is *material* only if "there is 'a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented

with the new evidence.'" *Id.* (quoting *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988)). And one shows *good cause* by "demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Id.* (citing *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (1984) (per curiam)). "It is well established that the party seeking remand bears the burden of showing that a remand is proper under Section 405." *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986).

Pinckney-Stovall cannot demonstrate that the school records and the 1999 evaluation are new. Both items existed long before the hearing. No concrete excuse as to the failure to acquire either has been given, and the latter was even presented as evidence in Pinckney-Stovall's previous SSI benefits record. Although Pinckney-Stovall suggests "she previously received a letter from Woodsworth Academy that the records no longer exist," she does not say when this letter was received, whether it was sent before or after she acquired the records at issue, or when she actually attained the records from Woodsworth. Indeed, Pinckney-Stovall was represented by an attorney from July 2011 through the first hearing in this case, as correspondence from her attorney in October 9, 2014 demonstrates, and again by present counsel since April 1, 2015; every possibility remains that attorney incompetence—and not evidentiary unavailability—was to blame for the delay. (Tr. 41-49, 79-80, 143-44); *see Taylor v. Comm'r of Soc. Sec.*, 43 F. App'x 941, 943 (6th Cir. 2002) ("[T]here is absolutely no statutory or decisional authority for [Plaintiff's] unstated, but unmistakable, premise that the alleged incompetence of [her] first attorney constitutes 'good cause' in this context. In addition, all of the proposed 'new'

evidence was in existence at the time of the hearing, but it was not produced for whatever reason."); *see also Hairston v. Comm'r of Soc. Sec.*, No. 14-13218, 2015 WL 4633935, at *5 (E.D. Mich. Aug. 3, 2015); *Jackson v. Comm'r of Soc. Sec.*, No. 07-14184, 2009 WL 612343, at *3 (E.D. Mich. Mar. 6, 2009) ("Mistakes by an attorney are not considered to be 'good cause' for purposes of a remand under Sentence Six.").

Put simply, Pinckney-Stovall has not shown that the records are new, and therefore a Sentence Six remand would be inappropriate even if *res judicata* presented no bar to this case.

### 2.     SSR 83-20

Pinckney-Stovall's second argument is two-pronged: the ALJ violated SSR 83-20 because (i) he failed to examine the "previous fully favorable decision" from 2002 and its record, which "contained the neuropsychological evaluation from Dr. DellaPietra" from 1999, and (ii) he failed to call a medical expert to pinpoint the onset date of her conditions. (Doc. 9 at ID 546).[6]

"Social Security Ruling 83-20 governs the determination of disability onset date. Once a finding of disability is made, the ALJ must determine the onset date of the disability." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006).  The policy provides that in "title II cases, disability insurance benefits (DIB) may be paid for

---

[6] I note at the outset that the 2002 decision is not *res judicata* to the instant case regarding adult child benefits. *McGirt v. Colvin*, No. CV 314-038, 2015 WL 5003667, at *5 (S.D. Ga. Aug. 21, 2015)("*res judicata* does not apply because the standards of disability for adults and children are different");*Willard v. Astrue*, No. 09-CV-2689 LAB (WMc), 2011 WL 4499010, at *4  (S.D. Cal. Jan. 6 2011)("The Court has found no authority for applying the presumption of nondisability to an unadjudicated time period *before* the denial of a claimant's application for benefits"). .

as many as 12 months before the month an application is filed. Therefore, the earlier the onset date is set, the longer is the period of disability and the greater the protection received." On the other hand, "[u]nder title XVI, there is no retroactivity of payment. Supplemental security income (SSI) payments are prorated for the first month for which eligibility is established after application and after a period of disability. Therefore, except certain cases of aliens…the only instances when the specific date of onset must be separately determined for a title XVI case is when the onset is subsequent to the date of filing or when it is necessary to determine whether the duration requirement is met." 1983 WL 31249, SSR 83-20, at *1.

The policy then describes guidelines for different types of cases. As to "childhood disability cases, a precise onset date need not be established as long as disability is found to have begun prior to the attainment of age 22 "A *precise onset date will be necessary* to determine the first month of entitlement *when all the following conditions are met*: (a) the application is filed before attainment of age 23, (b) disability began within 12 months of the date the application is filed, and (c) disability is established after attainment of age 18." Id. at *5 (emphasis supplied). These standards mirror those setting forth entitlement to disabled child benefits in 20 C.F.R. §404.350(a)(5) as cited by the ALJ. )Tr. at 13-14.) Since the ALJ did not find that the "conditions [we]re met[,]" a precise onset date" was not "necessary" under the plain reading of the regulation. The ALJ in the instant case found no legitimate medical basis for Pinckney-Stovall being disabled prior to age 22. (Tr. at 15-17.) It therefore appears that SSR 83-20, by its own terms, did not require the ALJ to determine a precise onset date of a disability the ALJ found did not exist. This reading

comports with the general rule that "this policy statement [SSR 83-20] applies only when there has been a finding of disability and it is necessary to determine when the disability began." *Key v. Callahan*, 109 F.3d 270. 274 (6th Cir. 1997).

The only potential reason to depart from the plain reading of the policy would stem from a nuanced question whether the finding of disability must occur in the instant case or whether a previous finding of disability (regarding a later or earlier period of time) would be sufficient to require the ALJ to choose an onset date. In *Smits v. Colvin*, No. 13-223-GFVT, 2015 WL 505465 (E.D. Ky. Feb. 6, 2015), the court observed that SSR 83-20 "fails to explicitly address whether the prerequisite finding of disability must be in the case instantly before the ALJ, or if a previous finding of disability is sufficient to trigger its application." *Id.* at *7. In the instant case, no finding of disability was made in the case before the ALJ but, in a previous application, Plaintiff was found to have been disabled as an adult since 2002. Therefore, the nuanced question is relevant here.

The court in *Smits* cited several reasons why it would make sense to construe SSR 83-20 as only requiring the ALJ to determine an onset date after the ALJ in a current case makes a finding of disability:

> First, the ALJ is only to consider evidence presented in the claimant's claim file. *See* 20 C.F.R. § 404.1520(3) . . . . Second, the approach lauded by Smits seems to take ALJs out of the five-step sequential process, which ALJ's are bound to follow, without any clear indication that such a detour is intended. . . . If ALJs are, in fact, supposed to defer to past findings of disability for purposes of applying SSR 83-20 then this could easily be made clear. . . . Third, the Court notes that a distinct process exists to amend an onset date.

27

*Id.* at *7 (internal citations omitted). Ultimately, the court in *Smits* noted that "other Courts have uniformly and unambiguously disagreed with" the position taken in the court's analysis so the court acquiesced and remanded for the ALJ to determine an onset date.

There is some logic supporting the notion that where, as here, a plaintiff is found to be disabled at a later age based on non-traumatic mental capacity issues (rather than a traumatic mental injury or physical injury), the onset date could precede the date of application or decision in the prior case since non-traumatic mental capacity issues are usually present throughout an individual's entire life. In other words, where Plaintiff was found to be mentally incapable of performing work in 2002, it is possible, perhaps even probable, that this disability was present before 2002.

One district court in Vermont has held that where the plaintiff has been found to be disabled as of a later date, SSR 83-20 requires the ALJ in the current case (regarding an earlier time period), to determine a specific onset date, regardless of whether there is contemporaneous medical evidence documenting impairment as of the earlier time period currently at issue. *Falconi v. Astrue*, No. 2:12-cv-37, 2012 WL 5381833, at * 4-8 (D. Vt. Nov. 1, 2012). The court indicated that "[i]n cases like this, where a claimant has already been found disabled under another title of the Social Security Act, SSR 83-20 requires the ALJ to determine the onset date of disability" especially where the claimant has "long-standing mental health impairments." The court further found that the "ALJ's constricted focus on the lack of medical records" from the relevant period was inconsistent with SSR 83-20 because 'given the lack of precise evidence as to the onset of [plaintiff's] disability, SSR 83-20 required the ALJ to infer the date…"

Therefore, I find that if the case is considered on the merits, the case should be remanded for the ALJ to determine the onset date of Plaintiff's disability. *See Houston v. Comm'r of Soc. Sec.*, No. 10-CV-14831, 2011 WL 6152992, at *11 (E.D. Mich. Sept. 30, 2011), *report and recommendation adopted,* No. 10-14831, 2011 WL 6152982 (E.D. Mich. Dec. 9, 2011) ("'[I]n cases like this, where a claimant with an alleged disability onset date preceding [his] 22nd birthday files an application for adult child's benefits, and has already been found disabled under another title of the Social Security Act for the period postdating [his] 22nd birthday, SSR 83-20 requires the ALJ to determine the onset date of disability.'" (quoting *Plumley v. Astrue*, No. 2:09-CV-42, 2010 WL 520271, at *5 (D. Vt. Feb. 9, 2010) (citing SSR 83-20, 1983 WL 31249)); *see also, e.g.*, *Williams v. Comm'r of Soc. Sec.*, No. 12-15075, 2014 WL 822191, at *9 (E.D. Mich. Feb. 10, 2014), *report and recommendation adopted,* No. 12-15075, 2014 WL 822489 (E.D. Mich. Mar. 3, 2014) (citing *Houston* for this same proposition);  *Martin v. Comm'r of Soc. Sec.*, No. 12-14773, 2014 WL 1048150, at *15 (E.D. Mich. Mar. 18, 2014) (same).

In addition, if the case is remanded, the ALJ should also obtain the services of a medical advisor in determining the onset date. "If the 'medical evidence is not definite concerning the onset date and medical inferences need to be made, SSR 83-20 requires the administrative law judge to call upon the services of a medical advisor and to obtain all evidence which is available to make the determination.'" *Armstrong v. Comm'r of Soc. Sec.*, 160 F.3d 587, 589-90 (9th Cir. 1998)(citation omitted). This holding is buttressed by reference to an oft-cited portion of the policy that governs inferences as to onset date, SSR 83-20 provides

29

In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred sometime prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed as of a disabling level of severity depends on an informed judgment of the facts in a particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) *should call on the services of a medical advisor when onset must be inferred.* If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.

1983 WL 31249, at *3. (emphasis supplied).

As indicated in the policy, a medical advisor need only be called on if the medical evidence of onset is ambiguous and must be inferred. Since Plaintiff was found to be disabled in 2002, a medical advisor is needed. *Graves v. Colvin*, No. 2:15-cv-00106-RFB-NJK, 2016 WL 3360669, at *5 (D. Nev. Mar. 29, 2016)("an ALJ must comply with SSR 83-20 to develop the record to determine an onset date when there is 'either an explicit ALJ finding or substantial evidence that the claimant was disabled at some point after the date last insured,' and when there is an ambiguity as to the onset date…[where there is] 'some, limited evidence' that the disability onset date was before the date last insured."); *Sullivan v. Colvin*, No. 14-cv-06-JL, 2015 WL 1097404, at *3 (D. N.H. Mar. 11, 2015)(remanding for the ALJ to call on the services of a medical advisor where the "commissioner does not claim that Sullivan's records unambiguously demonstrate that she was not suffering from a disabling impairment prior to her date last insured").

Finally, Pinckney-Stovall may suggest that her argument truly aims at the ALJ's failure to adequately supplement the record by not acquiring (among other items) the favorable SSI determination from 2002. In the Sixth Circuit, an ALJ holds "an affirmative

30

duty to develop the factual record upon which his decision rests, regardless of whether the claimant is represented by legal counsel at the administrative hearing." *Martin v. Comm'r of Soc. Sec.*, No. 12-14773, 2014 WL 1048150, at *17 (E.D. Mich. Mar. 18, 2014). The Sixth Circuit coined a special duty to develop the record for unrepresented claimants in *Lashley v. Secretary of Health and Human Services*, 708 F.2d 1048 (6th Cir. 1983), where it found a superficial and cursory hearing of an unrepresented claimant denied him constitutional due process. It noted that "[t]here is no bright line test for determining when the [ALJ] has assumed the role of counsel or failed to fully develop the record. The determination in each case must be made on a case by case basis." *Id.* at 3. Further, it held that courts would apply "special scrutiny" where "the claimant appeared . . . without counsel." *Id.* (citing *Holden v. Califano*, 641 F.2d 405, 408 (6th Cir. 1981). The court in *Williams v. Commissioner of Social Security*, for instance, remanded a case where the unrepresented plaintiff was denied child disability benefits on a record containing only "educational school records from the 1975 to 1982 time period," and "no contemporaneous medical records from . . . before plaintiff turned 22 years old" in 1989. No. 12-12-15075, 2014 WL 822191, at *10 (E.D. Mich. Feb. 10, 2014), *report and recommendation adopted,* No. 12-15075, 2014 WL 822489 (E.D. Mich. Mar. 3, 2014). Such a sparse record failed to supply substantial evidence on which to rely.

As in *Williams*, the record before the ALJ here included little evidence from the period before Pinckney-Stovall's 22nd birthday, and Pinckney-Stovall similarly lacked the assistance of hired counsel at her supplemental hearing. Therefore, the ALJ should assure a more complete record if the case is remanded.

## I.    Conclusion

For the reasons stated above, the Court **RECOMMENDS** that Pinckney-Stovall's Motion for Summary Judgment, (Doc. 9), be **DENIED**, and the Commissioner's Motion, (Doc. 12), be **GRANTED** because the reopening of the 2007 decision exceeded four years and was untimely.

Alternatively, if the case is considered on the merits, it would be recommended that the Plaintiff's motion be granted, the Commissioner's motion be denied, and the case be remanded under sentence four of §405(g) for the ALJ to comply with SSR 83-20.

## III.    <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  July 31, 2017                                     S/ Patricia T. Morris
                                                        Patricia T. Morris
                                                        United States Magistrate Judge

## CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: July 31, 2017                                     By s/Kristen Castaneda
                                                        Case Manager

33